[Crim. No. 9272.   In Bank.   Dec. 6, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH H. THAYER et al., Defendants and Appellants.

636

Ball, Hunt & Hart, Joseph A. Ball and Harman M. Hitt for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendants Thayer and Magruder were convicted of 22 counts of violating section 72 of the Penal Code by submitting false and fraudulent claims to the Bureau of Public Assistance of Los Angeles County and of conspiring to submit such claims. They appeal from the judgments on the sole ground that records used as evidence against them were unconstitutionally obtained.

Defendant Thayer is a physician; defendant Magruder is his office assistant. Dr. Thayer treated patients whose medical care was paid for by the Bureau of Public Assistance. For each patient he submitted a "medical care statement" to the bureau and certified thereon that he had performed the services described, that the amount was due and unpaid, and that the stated fee represented the entire charge for services to the patient.

At the trial, the prosecution sought to prove that the bureau was billed for services never performed and for services also billed to others. It introduced into evidence medical care statements submitted to the bureau and corresponding medical care records taken from Dr. Thayer's files under a search warrant. Charges for visits and treatments on the statements were not shown in Dr. Thayer's records. In addition, many of the records contained illegible scrawls or wavy lines corresponding to items billed on the statements. Several of Dr. Thayer's employees testified that they used these records in preparing the statements and that they were instructed to show at least four visits on each statement whether or not there had been that many visits. There was also testimony

that the wavy lines were written by Dr. Thayer to indicate visits or treatments that were to be billed to the bureau even though they had never occurred.

Defendants contend that the seizure of the records and their use as evidence constituted an unreasonable search and seizure and a violation of their privilege against self-incrimination under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the California Constitution. They urge that the records could not be seized even under a warrant concededly authorized by statute (Pen. Code, § 1524), because they were merely evidence of crime and not contraband, instruments of crime, or fruits of crime.

The asserted rule that mere evidence cannot be seized under a warrant or otherwise is condemned as unsound by virtually all the modern writers. It is typically described as "unfortunate" (8 Wigmore, Evidence (McNaughton rev. 1961) § 2184(a), pp. 45-46) and is a commonly-used example of a legal absurdity. (See, e.g., Kamisar, *Public Safety* v. *Individual Liberties: Some "Facts" and "Theories"* (1962) 53 J.Crim.L., C.&P.S. 171, 177; Kaplan, *Search and Seizure: A No-Man's Land in the Criminal Law* (1961) 49 Cal.L.Rev. 474, 477-479; Comment, *Limitations on Seizure of "Evidentiary" Objects: A Rule in Search of a Reason* (1953) 20 U.Chi.L.Rev. 319; Traynor, *Mapp* v. *Ohio At Large in the Fifty States,* 1962 Duke L.J. 319, 330-331.) Although often invoked in cases involving the seizure of papers, the rule is not limited to papers at all but purports to prohibit the seizure of any object that is merely evidentiary. The rationale for this curious doctrine has never been satisfactorily articulated. It creates a totally arbitrary impediment to law enforcement without protecting any important interest of the defendant. A person has a constitutional right to be secure from unreasonable searches and seizures by the police. When the search itself is reasonable, however, it is impossible to understand why the admissibility of seized items should depend on whether they are merely evidentiary or evidentiary plus something else. The rule seems to have its basis in property concepts, in a theory that the sovereign may seize only those objects that it is illegal to possess, or to which the sovereign may assert a claim because they have been wrongfully obtained or used. (*Gouled* v. *United States* (1921) 255 U.S. 298, 309 [41 S.Ct. 261, 65 L.Ed. 647].) The modern view, however, is that the exclusionary rules of evidence exist

primarily to protect personal rights rather than property interests and that common-law property concepts are usually irrelevant. (*Jones* v. *United States* (1960) 362 U.S. 257, 266 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233].) Determining the admissibility of evidence on the basis of the sovereign's right at common law to replevy the items is anachronistic. It inevitably gives rise to technical rules that are entirely unrelated to the real issues of individual privacy and law enforcement that are involved.

Although property notions fathered the rule, some of the opinions imply that its major purpose is to prevent exploratory searches. (See, e.g., *United States* v. *Lefkowitz* (1932) 285 U.S. 452, 465-466 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775].) If that is the purpose of the rule, it is certainly not its effect. The rule does not prevent exploratory searches at all; it prevents the seizure of mere evidence in the course of any search, reasonable or unreasonable, specific or general. It has also been suggested that the rule protects privacy by preserving a man's most private papers from any scrutiny or seizure, however reasonable. (Comment (1953) 20 U.Chi. L.Rev. 319, 327.) The difficulty with this rationale is that the rule protects, not private papers, but mere evidence. ██ ''There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized.'' (*Gouled* v. *United States* (1921) 255 U.S. 298, 309 [41 S.Ct. 261, 65 L.Ed. 647].) Private papers that are the instruments of crime, such as a spy's code books (*Abel* v. *United States* (1960) 362 U.S. 217 [82 S.Ct. 683, 4 L.Ed.2d 668]) may be seized. Finally, it is impossible to sustain the mere evidence rule as a corollary of the privilege against self-incrimination. It is not limited to self-incriminating writings, and when such writings are obtained by seizure, instead of by subpoena, the defendant does not impliedly admit their genuineness. (See Maguire, Evidence of Guilt (1959) p. 23; Meltzer, *Required Records, the McCarren Act, and the Privilege Against Self-Incrimination* (1951) 18 U.Chi.L.Rev. 687, 700; cf. *Boyd* v. *United States* (1886) 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746].) Moreover, the papers are no less self-incriminating when they can be classified as contraband, instruments of crime, or fruits of crime.

██ In California, the mere evidence rule is rejected by statute. (Pen. Code, § 1524, subd. 4.) Defendants contend, however, that *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct.

1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], *Ker* v. *California* (1963) 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726], and *Malloy* v. *Hogan* (1964) 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], compel us to accept it. The *Mapp* and *Ker* cases held that a state must exclude evidence uncovered by an unreasonable search and that the standard of reasonableness is the same under the Fourth and Fourteenth Amendments. *Malloy* v. *Hogan* held that the standard for determining the availability of a claim of the privilege against self-incrimination is the same under the Fifth and Fourteenth Amendments.

■ Federal rules based on the supervisory power of the United States Supreme Court over the administration of justice in the federal courts, however, are not binding on the states. (*Ker* v. *California* (1963) 374 U.S. 23, 33 [83 S.Ct. 1623, 10 L.Ed.2d 726].)

Defendants contend that *Gouled* v. *United States* (1921) 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647], adopted the mere evidence rule as a constitutional standard. Although the court in *Gouled* purported to rest its holding on the Fourth and Fifth Amendments, it did not rely on any specific constitutional language. There are compelling reasons, moreover, for not blindly accepting that opinion at face value. *Mapp* v. *Ohio, supra,* 367 U.S. 643, created problems that were totally unforeseen in 1921, when the *Gouled* opinion was written. The court that decided *Gouled* could not have known that basing its decision on the Constitution, rather than on the court's power to prescribe rules of evidence for the federal courts, might one day have the consequence of imposing the rule upon the states. *Ker* v. *California* has now recognized that the purpose of the distinction between constitutional and supervisory rules is to separate fundamental civil liberties, which the states must respect, from federal procedural rules, which the states may ignore. Opinions written before this distinction assumed its present crucial importance may have to be reinterpreted in the light of "the demands of our federal system." (*Ker* v. *California, supra,* 374 U.S. at p. 33.)

*Gouled* v. *United States* is a particularly apt candidate for such reinterpretation, for its adoption of the mere evidence rule as a constitutional standard was not necessary to the result in the case. The validity of a warrant authorizing the seizure of materials stipulated to be merely evidentiary was challenged. The federal statute under which the warrant was issued authorized seizure only when the property was "stolen or embezzled" or "used as the means of committing a felony."

(40 Stat. 228.) Instead of basing its decision on the statute the court said that the search and seizure violated the Fourth and Fifth Amendments. Perhaps it meant no more than that the seizure was unconstitutional because seizures that exceed statutory authority are always unreasonable.

The Supreme Court itself has not treated the *Gouled* rule as a fundamental constitutional standard. Although the rule is now set forth in Federal Rules of Criminal Procedure, rule 41(b), the court has refused without explanation to apply it to evidence other than tangible objects, such as that obtained by electronic devices designed to intercept conversations, although no policy reason for the distinction suggests itself. (*On Lee* v. *United States* (1952) 343 U.S. 747, 753 [72 S.Ct. 967, 96 L.Ed. 1270].) No Supreme Court case since *Gouled* has excluded evidence solely because of the *Gouled* rule. The rule has been distinguished nearly out of existence by the instrumentality exception. The *Gouled* case recognized that instruments used in the commission of crime may be seized because of the public's interest in preventing their use in subsequent crimes. This policy, however, furnishes no justification for the use of the instrument as evidence if such use would otherwise violate the Fourth and Fifth Amendments. It is not necessary to use the instrument as evidence to prevent its use in future crimes. Sending the owner to prison may prevent future crimes, but this consideration applies to mere evidence as well as instrumentalities. The same might be said of the other categories of evidence that may be seized, contraband and the fruits of crime. Certainly the sovereign or the rightful owner may replevy such items, but why the admission of evidence should turn on the law of replevin is a mystery. (See *State* v. *Bisaccia* (1965) 45 N.J. 504 [213 A.2d 185].) Nor is it clear by what means it can be determined whether or not an object is the instrument or fruit of crime until the owner's guilt or innocence is determined at the trial.

The first Supreme Court case to interpret the *Gouled* rule was also the first case to use the instrumentality exception to restrict its scope severely. In *Marron* v. *United States* (1927) 275 U.S. 192 [48 S.Ct. 74, 72 L.Ed. 231], federal officers lawfully entered a saloon and observed illegal sales of liquor. They then arrested the employees and patrons, and seized a business ledger and some utility bills. The search and seizure were held reasonable because they were incident to an arrest, and the ledger and bills were admitted into evidence. The court met the assertion that the *Gouled* rule required their exclusion by holding that utility bills and business

accounts are convenient if not necessary for conducting an illegal liquor business and are therefore seizable instrumentalities of the crime. No one claimed that seizure of the ledger and bills would in any way prevent future crimes except by enabling the government to obtain convictions.

It is contended that the Supreme Court retreated somewhat from this position in *United States* v. *Lefkowitz* (1932) 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed 877, 82 A.L.R. 775]. In *Lefkowitz*, as in *Marron*, federal agents raided an illegal liquor business and seized a number of items, including business records and utility bills. The difference was that in *Lefkowitz* the officers did not limit themselves to seizing items plainly visible, but made a thorough search of the drawers, cabinets and waste-baskets. The court suppressed the evidence because the search was too broad, and because the items seized were mere evidence. The manner in which *Marron* v. *United States* was distinguished, however, hardly served to reinforce the *Gouled* rule. In *Marron*, the court said, the search was reasonable and the items were held to be instruments of the crime. Since the items seized and the offense charged were almost precisely the same in both cases, the distinction between the two cases was only the scope of the search. When the search was so broad as to be exploratory in nature, the mere evidence rule was resurrected as an alternative (and superfluous) ground for exclusion. When the search was otherwise reasonable, the same items became instruments of crime.

*Marron* and *Lefkowitz* set the pattern for future treatment of the *Gouled* rule in the Supreme Court. Although the rule was never expressly repudiated, evidence was never suppressed because of it. In nearly every case the central issue was the legality of a search incident to an arrest. (*Davis* v. *United States* (1946) 328 U.S. 582, 595 [66 S.Ct. 1256, 90 L.Ed. 1453] ; *Zap* v. *United States* (1946) 328 U.S. 624, 632-633 [66 S.Ct. 1277, 90 L.Ed. 1477] ; *Harris* v. *United States* (1946) 331 U.S. 145, 154 [67 S.Ct. 1098, 91 L.Ed. 1399] ; *Abel* v. *United States* (1960) 362 U.S. 217, 234-238 [80 S.Ct. 683, 4 L.Ed.2d 668].) A typical treatment of the rule is found in *Zap* v. *United States, supra,* in which the disputed issue was whether incriminating evidence (a check) could be seized in the course of a search to which the defendant had consented by contract. The court held that since the search was lawful the agents could have copied the check and used the copy as evidence; therefore no purpose would be served by holding that consent to the search was not also consent to the seizure. (328 U.S.

at pp. 629-630.) The dissent raised the mere evidence rule, but appeared to assume with the majority that the check could nonetheless be seized under a warrant. (*Id.* at pp. 623-633.) While *Zap* v. *United States* does not expressly abolish the rule, it saps it of all vitality. To say that the prosecution could introduce copies of Dr. Thayer's records but not the originals would be nonsense. ''There is no war between the Constitution and common sense.'' (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 657 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933].)

Thus the *Gouled* rule is often cited but no longer applied. Its claim to constitutional standing rests on a single case in which it was not necessary to decide any constitutional issues. It has been distinguished to the point of extinction in subsequent opinions by the use of technical exceptions and without discussion of policy. It is universally criticized by the writers, and lacks a clear basis in any constitutional language. *Ker* v. *California,* which was concerned with entirely different substantive issues, contains no indication that such a dubious technical rule will be imposed upon the states. ■ We hold that the mere evidence rule is not a constitutional standard and has no application in California. Other state courts that have recently considered the matter have come to the same conclusion. (*State* v. *Bisaccia* (1965) 45 N.J. 504 [213 A.2d 185] ; *People* v. *Carroll* (1964) 38 Misc.2d 630 [238 N.Y.S.2d 640].)

■ Even if the mere evidence rule were a constitutional standard, it would not require the exclusion of Dr. Thayer's medical care records, for they were the instruments of crime. The employees testified that they used the records to draw up the fraudulent statements. In some cases Dr. Thayer placed wavy lines on the records to indicate that false billings were to be made. Under the circumstances, these records were more instrumental in the commission of the crime than were the utility bills and ledger in *Marron* v. *United States, supra,* 275 U.S. 192, and the code books in *Abel* v. *United States, supra,* 362 U.S. 217. (See also *Matthews* v. *Correa* (2d Cir. 1943) 135 F.2d 534; *Landau* v. *United States Attorney* (2d Cir. 1946) 82 F.2d 285, cert. den. 298 U.S. 665 [56 S.Ct. 747, 80 L.Ed. 1389].)

■ Finally, it should be noted that there are some opinions that construe *Gouled* v. *United States* to protect privacy by preserving private papers, such as a personal diary, from any seizure. (*Davis* v. *United States* (1946) 328 U.S. 582, 595

[66 S.Ct. 1256, 90 L.Ed. 1453] [Frankfurter, J., dissenting] ; *United States* v. *Boyette* (4th Cir. 1962) 299 F.2d 92; *United States* v. *Stern* (D.C.S.D.N.Y. 1964) 225 F.Supp. 187.) This construction is contrary to the opinion of the court in *Gouled*, but even if there is such a rule, it would not prevent the seizure of business files such as the medical records in this case, which were freely open to the doctor's numerous employees. That business records are not constitutionally protected from properly authorized searches and seizures is indicated not only by *Marron* v. *United States, supra,* 275 U.S. 192, and *Zap* v. *United States, supra,* 328 U.S. 624, but also by the doctrine that records that are required by law to be kept are not protected by the privilege against self-incrimination. (*Shapiro* v. *United States* (1948) 335 U.S. 1 [68 S.Ct. 1375, 92 L.Ed. 1787].)

The judgments are affirmed. The appeals from the nonappealable orders denying motions for a new trial are dismissed.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

Appellants' petition for a rehearing was denied January 5, 1966.