[Crim. No. 11634.   Second Dist., Div. Two.   Aug. 30, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. WILLIE LEE McEWEN et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Nathaniel J. Friedman for Defendants and Respondents.

HERNDON, J.—This is an appeal by the People from an order granting a motion made pursuant to Penal Code section 995 and setting aside an information which charged defendants with possession of marijuana in violation of section 11530 of the Health and Safety Code.

On March 30, 1965, there was filed in the Municipal Court of the Los Angeles Judicial District a lengthy, and unquestionably sufficient, affidavit in support of an application for the issuance of several search warrants. These warrants were sought during the culminating stage of a thorough investigation by officers of the Los Angeles Police Department into the allegedly extensive activities in this community of prostitutes, pimps and panderers—a complex of professions euphemistically referred to in modern terminology as "call girl operations." This investigation focused considerable attention upon the cooperative assistance being given to these operations by certain telephone answering services.

The warrant here involved was issued authorizing the search of an apartment located at 1837 North Kingsley Drive, Los Angeles, California. The following quotation from the warrant indicates the items of personal property which it directed the executing officer to seize and "bring forthwith" before the court: "Trick books, personal address directories, utility bills, phone bills, rent receipts, telephone message slips, ~~documents of identity,~~ mechanical devices employed by prostitutes, ~~all lewd or objectionable obscene materials and other related prostitution paraphernalia.~~"[1]

Under the authority of this warrant, police officers entered the described premises on April 1, 1965, and searched for the items specified therein. In the course of this search the officers found and seized two boxes on a closet shelf described as follows in the return: "One white shoe box containing green seeds resembling marijuana seeds. One red box containing green leafy substance resembling marijuana. One chrome metal stringer." This apartment was occupied by the defendants.

At the time defendants' motion under Penal Code section 995 was granted, the court had read only the search warrant itself and did not have before it, nor had it read, the affidavit in support of the warrant. Relying upon the opinion of the District Court of Appeal in *People* v. *Thayer** (Cal.App.) 44 Cal.Rptr. 718, the trial court concluded that the search warrant was invalid on its face because it purported to authorize a

---

[1]The indicated deletions appear on the face of the warrant as issued.

*A hearing was granted by the Supreme Court on August 4, 1965.

search for "mere evidence of a crime." However, our Supreme Court subsequently granted a hearing in the *Thayer* case and expressly rejected this view stating: "We hold that the mere evidence rule is not a constitutional standard and has no application in California." (*People* v. *Thayer*, 63 Cal.2d 635, 642 [47 Cal.Rptr. 780, 408 P.2d 108].)

▮ Moreover, even if the mere evidence rule were a constitutional standard, it would not render invalid a search warrant directed to the seizure of "trick books, personal address directories, . . . telephone message slips, mechanical devices employed by prostitutes" because in the context of the present case such material would properly be considered "the instruments of crime." (*People* v. *Thayer, supra,* 63 Cal.2d at p. 642, and cases cited. Cf. also, *People* v. *Martin*, 228 Cal.App.2d 677, 679 [39 Cal.Rptr. 526].)

In seeking to sustain the order made herein, defendants contend that the warrant was void on its face in any event because it failed to describe with sufficient particularity the things to be seized and therefore constituted the "general warrant" condemned in *Stanford* v. *Texas*, 379 U.S. 476, 480 [85 S.Ct. 506, 13 L.Ed.2d 431]. We regard this contention as unmeritorious.

As indicated by our previous quotation from the warrant, it shows on its face that the words "documents of identity" and "all lewd or objectionable obscene materials and other related prostitution paraphernalia" were stricken prior to the issuance of the warrant. These deletions demonstrate the care that was taken to avoid the improper issuance of a general warrant. ▮ In determining the sufficiency of a search warrant to fulfill the requirement of specificity, "The test is whether the warrant places a meaningful restriction on the objects to be seized (*Aday* v. *Superior Court*, 55 Cal.2d 789, 796 [13 Cal.Rptr. 415, 362 P.2d 47])." (*People* v. *Barthel*, 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290].)

In the *Stanford* case, the premises to be searched were Stanford's home wherein he resided and from which he carried on a mail order business under the trade name "All Points of View." "The district judge issued a warrant which specifically described the premises to be searched, recited the allegations of the applicant's and affiants' belief that the premises were 'a place where books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party in Texas are unlaw-

fully possessed and used in violation of Article 6889-3 and Article 6889-3A, Revised Civil Statutes of the State of Texas,' and ordered the executing officers 'to enter immediately and search the above described premises for such items listed above unlawfully possessed in violation of [said statutes], and to take possession of same.' '' (*Stanford* v. *Texas, supra,* 379 U.S. at pp. 478-479.)

The Assistant Attorneys General whose affidavits had been offered in support of the warrant issued in *Stanford,* conducted a four-hour search on the premises in the course of which they gathered up about half the books they found in the house. ''Most of the material they took came from the stock in trade of the petitioner's business, but they took a number of books from his personal library as well. The books and pamphlets taken comprised approximately 300 separate titles, in addition to numerous issues of several different periodicals. Among the books taken were works by such diverse writers as Karl Marx, Jean Paul Sartre, Theodore Draper, Fidel Castro, Earl Browder, Pope John XXIII, and Mr. Justice Hugo L. Black. The officers also took possession of many of the petitioner's private documents and papers, including his marriage certificate, his insurance policies, his household bills and receipts, and files of his personal correspondence.'' (*Stanford* v. *Texas, supra,* 379 U.S. at pp. 479-480.)

The United States Supreme Court therefore aptly noted: ''In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain.[16] [Citations.]'' Footnote 16 reads as follows: ''The word 'books' in the context of a phrase like 'books and records' has, of course, a quite different meaning. A 'book' which is no more than a ledger of an unlawful enterprise thus might stand on a quite different constitutional footing from the books involved in the present case. See *Marron* v. *United States,* 275 U.S. 192, 198-199 [48 S.Ct. 74, 76-77, 72 L.Ed. 231, 237-238]'' (*Stanford* v. *Texas, supra,* 379 U.S. at p. 485.)

We regard it as clear that the search warrant here involved properly described the ''things to be seized.'' As previously indicated, most of the items specified in the warrant could appropriately be denominated as the ''instruments of crime'' and none of them could be described as ''literary properties.'' The other items were particularly described papers that would

serve as evidence of the relationships of the parties allegedly engaged in the unlawful business of prostitution.

██ When in the course of executing this valid warrant the officers found the contraband narcotics, its seizure was entirely proper as was its subsequent receipt in evidence in support of the charge contained in the information. (44 Cal.Jur.2d, Searches and Seizures, § 52, pp. 388-389, and cases cited.)

The order under review is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied September 19, 1966.