Opinion
IBAÑEZ, J.
Appeal by defendants from an order denying their motion to suppress. (Pen. Code, § 1538.5.) The defendants were charged with violating Penal Code section 311.2 (distributing obscene material). After pleas of not guilty were entered, a motion to suppress was made and denied. The trial date was continued and the appeal from the order denying suppression followed.
The appeal is on a settled statement on appeal, minute entries in the certified court docket, the search warrant and the affidavit in support thereof.
Statement of the Facts
Robert E. Peters was an officer in the City of Los Angeles assigned to “Administrative Vice.” In the 5 years of this assignment he participated in approximately 100 obscenity investigations. He maintained a post office box at the Hollywood Post Office under the assumed name of “David Allen.” On May 27, 1977, he found in his post office box an envelope addressed to him under his assumed name. It contained a brochure of sexually explicit 8 mm. films available at stated prices. The envelope bore the following return address, “P.P.G., 110 Ivy Avenue, Monrovia, California.” Officer Peters did not solicit the brochure.
After receiving the brochure, Officer Peters began an obscenity investigation which is described, in detail, in his affidavit in support of a search warrant. He also responded to the brochure by ordering a film entitled, “Kinky Kids—Angelic Ass.” On October 26, 1977, he received a package addressed to him under his assumed name at the Hollywood Post Office. The package bore the same return address and it contained a motion picture film entitled “Kinky Kids.”
*Supp. 15 Officer Peters viewed the picture film which he had received to prepare his affidavit in support of the issuance of a search warrant. In this affidavit he described the scenes depicted in the film; he also gave an account of his investigation concerning its probable distributors. His affidavit was 18 pages in length. This affidavit and the search warrant issued responsive thereto, are part of the record before us.
Approximately 8:30 in the morning of October 31, 1977, Officer Peters went to the courtroom of the Honorable Edward L. Davenport, Judge of the Municipal Court for the Los Angeles Judicial District. His court was not in session. Besides the documents relating to the search warrant, Officer Peters took with him into Judge Davenport’s courtroom the film here involved. Officer Peters had a projector in his vehicle, parked nearby, ready for use in the event Judge Davenport wanted to view the film before issuing the warrant.
After reviewing the supporting affidavit of Officer Peters and the search warrant submitted to him, Judge Davenport was asked if he wished to view the film.[1] He declined the offer and signed the search warrant which was directed as follows: “. . . To Any Sheriff, Constable, Marshal, Police Officer, or Any Other Peace Officer in the County of Los Angeles:”
The search warrant commanded the executing officer to search certain described automobiles, certain described residences and a certain place of business for property described in the warrant.[2]
With the warrant in hand, Officer Peters went to the Police Department of the City of Monrovia. The City of Monrovia is located within the Santa Anita Municipal Judicial District. Officer Peters informed a police officer *Supp. 16 on duty at the Monrovia Police Department of his intention to conduct a search of the premises described in the search warrant.
A search was conducted at various locations in Monrovia by members of the Los Angeles Police Department under the supervision of Officer Peters. No officer of the Monrovia Police Department nor any officer of the Sheriff’s Department of Los Angeles County participated in the search.
A number of items[3] were seized from the various locations in Monrovia. On November 9, 1977, defendants’ attorney wrote a letter to Officer Peters requesting all of the business records and mail and other items seized on October 31, 1977, be returned to defendants.
On December 8, 1977, a complaint was filed against the defendants in the Municipal Court for the Los Angeles Judicial District charging the defendants with violation of Penal Code section 311.2. Following an entry of a plea of not guilty, and on January 30, 1978, defendants’ motion to suppress was heard and denied. This appeal followed.
Discussion
The defendants urge that the order denying their motion to suppress should be reversed. Three principal grounds for the reversal are urged. These will be considered seriatim:
I
Was the Search Invalid Because: (A) It Was Issued by a Magistrate of the Los Angeles Judicial District and Not by a Magistrate of the Santa Anita Judicial District Where the Seized Property Was Located, and, (B) Was the Warrant Properly Executed as Prescribed by Law?
A. The Issuance of the Warrant
The first prong of defendants’ argument is that the magistrate had no authority to issue a search warrant for execution outside of his judicial *Supp. 17 district. The argument is based upon the assertion that Penal Code section 830.1[4] applies as to the issuance of a search warrant as it does to its execution. One of the purposes of this section, defendants assert, is to avoid any inadvertent confrontations between police officers, some of whom are often dressed in plain clothes.
The statutory provisions relating to the issuance of warrants is found in chapter 3, title 12, part 2 of the Penal Code entitled “Search Warrant.” It includes sections 1523 through 1542. Authority to issue warrants is given to magistrates. (Pen. Code, § 807.) Certain persons are designated as magistrates, included among them are judges of the municipal court. (Pen. Code, § 808.) From the Penal Code sections referred to the legislative intent seems clear, namely, the jurisdiction of magistrates, acting in that capacity, is statewide. It follows that a search warrant or warrant of arrest issued by any magistrate, otherwise proper, is viable throughout the state. It has been held, “ ‘When a judge of a particular judicial district[5] acts in the capacity of a magistrate, he does not do so as a judge of a particular court but rather as one who derives his powers from the provisions of the Penal Code sections 807 and 808.’ ” (Koski v. James (1975) 47 Cal.App.3d 349, 355 [120 Cal.Rptr. 754].)
*Supp. 18 Neither People v. Raster (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.RJd 1269] nor People v. Grant (1969) 1 Cal.App.3d 563 [81 Cal.Rptr. 812], cited by defendants, are pertinent. In both cases the validity of a warrant issued in one county and executed in another was involved. In both cases the validity of the warrants, and the arrests made thereunder, were upheld on the ground that the officers were in pursuit of the subjects as they crossed the county line.
We find the contention of the defendants that the warrant issued by Judge Davenport, Judge of the Municipal Court for the Los Angeles Judicial District, in his capacity as magistrate, lacked validity within the adjoining Santa Anita Judicial District, is devoid of merit.
B. Execution of the Warrant
Even if the warrant had validity outside of the judicial district where it was issued, it was not executed in the manner prescribed by Penal Code section 830.1, defendants argue. Defendants assert that subdivision (b) of this section (see fn. 4, ante), was not complied with in that Officer Peters did not obtain consent to execute the search warrant from the Chief of Police of Monrovia, or a person authorized by him.
The warrant was executed in accordance with the formalities prescribed by Penal Code section 1529 and was issued to “any sheriff, constable or policeman.” Officer Peters, under the terms of the warrant, was authorized to execute the warrant. (Pen. Code, § 1530.)
Penal Code section 830.1 provides, in pertinent part, “The authority of any such peace officer extends to any place in the state.” This is followed by three subdivisions separated by the disjunctive “or.” Subdivision (a) of this section reads as follows: “(a) As to any public offense committed or which there is probable cause to believe has been committed within the political subdivision which employs him; or . . . .” There was probable cause for Officer Peters to believe that an offense, the one in question, had been committed in the “political subdivision which employ[ed] him.” His authority to execute the warrant in Monrovia was granted to him by subdivision (a) quoted above and not by subdivision (b) of Penal Code section 830.1 as contended by defendants. This difference in the two subdivisions was noted in People v. Pina (1977) 72 Cal.App.3d Supp. 35, 37 [140 Cal.Rptr. 270] cited by defendants.
This contention of the defendants is, likewise, lacking in merit. In sum, we find that the warrant was viable and was executed properly.
*Supp. 19 II
Was the Warrant Invalid Because the Magistrate Did Not View the Film?
Defendants’ second argument is that the warrant was issued without probable cause for the reason that the magistrate failed to view the film, having an opportunity to do so, before issuing the warrant. The film itself was the best evidence of its contents, defendants argue, citing People v. Enskat (1971) 20 Cal.App.3d Supp. 1 [98 Cal.Rptr. 646], where a best-evidence objection in an obscenity case was erroneously overruled, the opinion stating that the film itself, rather than an affidavit as to its contents, is the best evidence of what it portrays. Defendants also argue that because First Amendment rights are involved the issuance of a search warrant is not to be measured by the same standards governing the seizure of contraband or other evidence, citing Roaden v. Kentucky (1973) 413 U.S. 496 [37 L.Ed.2d 757, 93 S.Ct. 2796] and People v. Superior Court (Freeman) (1975) 14 Cal.3d 82 [120 Cal.Rptr. 697, 534 P.2d 393],
The People rely on People v. Haskin (1976) 55 Cal.App.3d 231, 236 [127 Cal.Rptr. 426] and on Monica Theater v. Municipal Court (1970) 9 Cal.App.3d 1 [88 Cal.Rptr. 71] which hold that it is not a requirement of probable cause that the magistrate view the film before issuing a warrant. The defendants reply by stating that in both cases it was not “feasible,” as it was in the instant case, for the magistrate to view the film before issuing the warrant. The defendants cite People v. de Renzy (1969) 275 Cal.App.2d 380, 387-388 [79 Cal.Rptr. 777] for a recital of the problems arising if a magistrate were required to go to a theatre for the purpose of viewing the film. Such problems were not present in the instant case state the defendants; Monica Theatre, supra, argues the defendant, was decided on the issue of the “feasibility” of the magistrate viewing the film; this issue was not present in the instant case, defendants assert. We find the defendants’ contentions in this regard also without merit.
After considering the supporting affidavit of Officer Peters, the magistrate made an implied determination of fact, namely that the affidavit was sufficient to establish probable cause and that viewing the film would be cumulative. (Evid. Code, § 352.) We conclude that the affidavit supports the magistrate’s conclusion of probable cause. (Theodor v. Superior Court (1972) 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234].)
*Supp. 20 III
Was the Warrant Overbroad in Its Scope?
The third and final contention of defendants is that the warrant was overbroad, that it permitted “unlimited search” in violation of defendants’ rights. (Aday v. Superior Court (1961) 55 Cal.2d 789, 796 [13 Cal.Rptr. 415, 362 P.2d 47]; Stanford v. Texas (1965) 379 U.S. 476 [13 L.Ed.2d 431, 85 S.Ct. 506].)
The criterion for determining whether a search warrant meets the requirements of specificity set forth in Penal Code section 1525 is “ ‘. . . whether the warrant places a meaningful restriction on the objects to be seized, [citations omitted]’ ” People v. McEwen (1966) 244 Cal.App.2d 534, 536 [53 Cal.Rptr. 362],
It is apparent from a reading of the items in the search warrant, ordered to be seized, that each item related specifically either to evidence of distribution of the film or to evidence of ownership and control of the specified premises.
The order is affirmed.
Pacht, Acting P. X, and Bigelow, X, concurred.

Hereinafter all references to the “film” will be to the motion picture film, the subject of this prosecution, and which was entitled, “Kinky Kids—4 (Angelic Ass).”
The scenes in the film were described in the affidavit of Officer Peters. The postures, movements, actions of nude men and women in successive montages of erotica were described in direct and candid frankness.

The property was described in the search warrant as follows:
“A. (3) Three copies of the 8 mm. film entitled ‘Angelic Ass—KK4.’
“B. Business records including but not limited to brochures, invoices, vouchers, shipping labels, orders schedules, receipts, contracts, agreements, bills, checks, accounts receivable, and payable notes, letters and memorandas, relating to the processing and distribution of the above entitled film.
“C. Rental or ownership agreements, utility and phone bills, which tend to show ownership or control of premises and/or vehicles to be searched.”

Among the items seized were a postage meter machine, [returned to the defendants by order of the court at the hearing on the suppression motion on the grounds that it was not listed in the warrant], an income tax form, order forms for films, other than for the film in question, checkbooks, deposit tickets, bank statements and other records described in the search warrant].

Section 830.1: “Any sheriff, undersheriff, or deputy sheriff, regularly employed and paid as such, of a county, any policeman of a city, any policeman of a district authorized by statute to maintain a police department, any marshal or deputy marshal of a municipal court, any constable or deputy constable, regularly employed and paid as such, of a judicial district, or any inspector or investigator regularly employed and paid as such in the office of a district attorney, is a peace officer. TTie authority of any such peace officer extends to any place in the state: (a) As to any public offense committed or which there is probable cause to believe has been committed within the political subdivision which employs him; or (b) Where he has the prior consent of the chief of police, or person authorized by him to give such consent, if the place is within a city or of the sheriff, or person authorized by him to give such consent, if the place is within a county; or (c) As to any public offense committed or which there is probable cause to believe has been committed in his presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of such offense.”

“ ‘The action taken by a judge of an inferior court who has issued the order for arrest or before whom an arrested person is brought after an arrest without a warrant, is not action by a judge of any court. It is action by a magistrate as incumbent of a distinct and statutory office. (People v. Cohen, 118 Cal. 74, 78 [50 P. 20]; People v. Brite, 9 Cal.2d 666, 685 [72 P.2d 122]; People v. Storke, 39 Cal.App. 633, 636 [179 P. 527]; People v. Velarde, 59 Cal. 457.)’ (Wells v. Justice Court, supra, 181 Cal.App.2d 221, 224-225 [5 Cal.Rptr. 204]; accord, People v. Randall, supra, 35 Cal.App.3d 972, 975 [111 Cal.Rptr. 590].)
“ ‘Justices of the supreme court, judges of the superior court, justices of the peace and police judges, when sitting as magistrates, have the jurisdiction and powers conferred by law upon fnagistrates, and not those which pertain to their respective judicial offices. They derive their powers and jurisdiction from the constitution, operating with the acts of the legislature upon the subject.’ (People v. Crespi (1896) 115 Cal. 50, 54 [46 P. 863]; accord, People v. Randall, supra, 35 Cal.App.3d 972.)” (Koski v. James, supra, p. 355.)