[L.A. No. 30041. In Bank. Sept. 5, 1973.]

STEPHEN MICHAEL GUIDI et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard G. Sherman and Alan Fenster for Petitioners.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry Wood and Daniel L. Lieberman, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—An alternative writ of mandate issued challenging the propriety of respondent court's failure to grant petitioners' motion to suppress contraband evidence alleged to be the fruit of an unreasonable seizure and search (Pen. Code, § 1538.5, subd. (a)), in proceedings wherein petitioners are charged with offering marijuana for sale and possession of marijuana for sale (Health & Saf. Code, §§ 11531, 11530.5).[1] We conclude that the seizure and subsequent search herein concerned were constitutionally permissible. We therefore discharge the alternative writ.

For some months prior to his election to cooperate with Orange County authorities as an undercover operative seeking to deal in narcotics, Joe Del Sesto had frequented various commercial establishments patronized by narcotics traffickers. Acting in his undercover capacity he entered into preliminary negotiations with petitioners Guidi, Lefort and Neilson and thereafter went to an apartment in Long Beach in order to inspect hashish proffered by such petitioners in exchange for an agreed purchase price of $7,500.

The door of the apartment opened into a living room which was partially separated from the adjacent kitchen by a counter or bar six to eight feet long and three and a half feet high. A hall led to two bedrooms and a bathroom at the rear of the apartment. Upon his entrance Del Sesto went

---

[1]Repealed effective March 7, 1973, and replaced by new Health and Safety Code sections 11360 and 11359, respectively. (Stats. 1972, ch. 1407.)

through the hall to the bathroom but was unable to observe the occupants of either bedroom as the doors to those rooms were closed. Having returned to the living room Del Sesto observed petitioner O'Connor withdraw 20 bricks of hashish, wrapped in pairs in separate plastic "baggies," from a brown grocery bag.

Del Sesto left the apartment to get the purchase money. Petitioners Lefort and Neilson, who had left with Del Sesto, were arrested on the street as they returned with Del Sesto to the apartment. Del Sesto told the officers that two other suspects were in the apartment and that the hashish was in a shopping bag on the floor of the living room. Del Sesto also said he had not been able to see if other occupants of the apartment were within the bedrooms.

Petitioner O'Connor responded to a police officer's knock and was arrested at the door of the apartment. Moving inside with weapon drawn and accompanied by two fellow officers, Officer Holt arrested petitioner Guidi in the living room. Both O'Connor and Guidi were handcuffed immediately. During this time Holt heard sounds coming from the rear of the apartment. He crossed the room to the kitchen. Behind the counter Holt saw a shopping bag with the opening squared shut. For the first time the officer became aware that the distinctive odor of hashish permeated the room and seemed to come directly from the vicinity of the bag. Seizing the bag he found the 10 "baggies" of hashish within. Holt then searched the bedrooms of the apartment, first for occupants and then more thoroughly to the point of rifling through drawers and opening shoeboxes. A small child was found in one bedroom and the tenant of the apartment in the other. The officers possessed neither search nor arrest warrants.

Essential to the maintenance of Fourth Amendment rights is the concept that a police intrusion into an area of private control should wherever feasible be made contingent on a *judicial* finding of probable cause embodied in a warrant. Nowhere has the warrant requirement been applied more stringently than in relation to searches of residences. The United States Supreme Court has repeatedly emphasized that probable cause alone, no matter how compelling, will not justify a search within a residence absent a warrant. (See *Vale* v. *Louisiana* (1970) 399 U.S. 30, 34 [26 L.Ed. 2d 409, 413, 90 S.Ct. 1969]; *Chapman* v. *United States* (1961) 365 U.S. 610, 613 [5 L.Ed.2d 828, 831, 81 S.Ct. 776].) The Fourth and Fourteenth Amendments mandate the exclusion of evidence seized in the course of an unreasonable search (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]), and warrantless residential searches have been judicially deemed "per se unreasonable" save where recognized exceptions apply. (*Katz* v. *United States* (1967) 389 U.S. 347,

357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1105 [80 Cal.Rptr. 633, 458 P.2d 713]; see also *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 68 et seq. [94 L.Ed. 653, 661 et seq., 70 S.Ct. 430] (dissenting opinion by Frankfurter, J.).)

Petitioners contend that the search of the bag of hashish in the kitchen falls within none of these exceptions to the presumptive invalidity of a warrantless search. The People argue that the odor emanating from the bag put the contraband inside it within the "plain smell" of Officer Holt, and urge that we treat "plain smell" as the legal equivalent of "plain view,"[2] thus invoking or creating, with respect to items possessing unique or distinctive odors, a rule similar to the long-standing concept that contraband seen in plain view may be seized without a warrant.[3]

Although it received only cursory attention from the parties in this case, we believe a substantial Fourth Amendment issue must be resolved preliminarily to our discussion of the seizure of the bag and the search thereof. ▮ It is elementary that the legality of the seizure of an object falling within the plain view of an officer is dependent upon that officer's right to be in the position from which he gained his view of the seized object. (*Harris* v. *United States* (1968) 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992].) Thus we must first determine whether Holt had a right to cross the living room and survey the kitchen before we can consider whether his plain view of the bag and his "plain smell" of the hashish within gave him legal ground to seize the bag and inspect its contents.

▮ One of the recognized exceptions to the rule that warrantless searches of residences are per se unreasonable is the search incident to an arrest within a residence. Indeed, this exception once threatened to eclipse the rule. The Supreme Court in *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] sought to delimit narrowly the scope of permissible warrantless searches incident to arrest and thereby reaffirm that the warrant requirement was essential to the vitality of the Fourth Amendment.

The *Chimel* court noted two rationales in justification of warrantless searches incident to arrest: the security of the arresting officers and the preservation of evidence. Yet for fear that through "unconfined analysis, Fourth Amendment protection in this area would approach the evaporation

---

[2]See footnote 18, *infra.*

[3]This rule is not truly an exception to the presumed invalidity of a warrantless search, since an object in plain view from a vantage point where the viewer has a right to be is disclosed without a search having been conducted. (See *Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *Ker* v. *California* (1963) 374 U.S. 23, 43 [10 L.Ed.2d 726, 744, 83 S.Ct. 1623] (plurality opinion).

point" (*id.,* at p. 765 [23 L.Ed.2d at p. 695]), the court insisted that the dual rationales for searches incident to arrest be oriented solely to the threat posed by the arrestee and limited the search for either weapons or evidence to the arrestee's person and the area within his immediate control.[4]

Petitioners invoke *Chimel* as authority for suppressing the seized hashish. Given the fact that both of the petitioners present in the apartment were handcuffed immediately upon arrest and were in any case never less than eight feet in front of the kitchen counter behind which the hashish was found, it is unquestionable that Officer Holt's survey of the kitchen cannot be validated as a search incident to arrest. The kitchen and any evidence or weapons it might have harbored were clearly beyond the reach of the arrestees. In any case, Holt was not even arguably attempting to comply with the *Chimel* limitation on warrantless searches. As previously mentioned, the arresting officers in clear derogation of petitioners' rights proceeded after the discovery of the hashish to search the entire apartment.[5]

Although Officer Holt's search cannot be justified under *Chimel,* that

---

[4]"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. [Citing *Katz* v. *United States* (1967) 389 U.S. 347, 357-358.] The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." (*Chimel* v. *California, supra,* 375 U.S. at pp. 762-763 [23 L.Ed.2d at p. 694].)

[5]Since this exploratory search revealed no additional contraband, it is not here challenged by petitioners. The extent of the search is nevertheless worthy of note as illustrative of the abuse of the power to search incident to arrest which the *Chimel* court sought to stop. The search here went under beds, beneath mattresses, and through shoeboxes and handbags hanging inside closets. "The [Fourth] Amendment is designed to prevent, not simply to redress, unlawful police action. In any event, we cannot join in characterizing the invasion of privacy that results from a top-to-bottom search of a man's house as 'minor.' And we can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require." (*Chimel* v. *California, supra,* 395 U.S. at pp. 766-767, fn. 12 [23 L.Ed.2d at p. 696].)

case concerned only one of the several exceptions to the rule that warrantless residential searches are inherently unreasonable. Thus our conclusion that Holt's positioning himself so as to gain a view of the kitchen was beyond his power to search incident to arrest is not necessarily dispositive of the legality of such action apart from the general exploratory search which followed.

*Chimel* was not the first case to recognize that measures reasonably tailored to assuring the security of arresting officers ought not to be inhibited by the warrant requirement. Earlier *Terry* v. *Ohio* (1968) 392 U.S. 1, 20 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868] had declared that "advance judicial approval of searches and seizures through the warrant procedure" is inherently impractical in the context of "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat. . . ." *Terry* thus effected a fundamental revision of Fourth Amendment analysis by reclassifying searches and seizures into two distinct categories.

The first of these categories is "police conduct subject to the Warrant Clause of the Fourth Amendment, . . ." Such searches and seizures are justifiable only upon "probable cause," the sufficiency of which must normally be tested in advance by application to a magistrate for a warrant. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 20 [20 L.Ed.2d at p. 905].)

The second category of searches and seizures outlined in *Terry* is composed of those intrusions which cannot practicably be made contingent on advance judicial approval. Such conduct "must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." (*Ibid.*)[6] In assessing reasonableness, "there is 'no ready test . . . other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " (Brackets in original.) (*Id.,* at p. 21 [20 L.Ed.2d at p. 905].) This balancing test is essentially a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (*Id.,* at p. 20.)

In *People* v. *Block* (1971) 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961] we recognized that *Chimel* and *Terry* must be read together in assessing the authority of police to search for possible additional suspects when making an arrest. *Chimel* concerned on its facts a solely evidentiary search —the quintessence of the sort of search *Terry* held subject to the warrant procedure. Moreover, *Chimel* concerned the arrest of just one man whom the police knew to be alone in his house with his wife. Thus there were not present in *Chimel* the reasonable grounds for self-protective measures to which *Terry* accorded constitutional recognition in its category of

---

[6]See first paragraph of footnote 16, *infra.*

searches and seizures not subject to the warrant requirement. We concluded in *Block* that while *Chimel* limited exploratory searches for evidence incident to arrest, *Terry* independently authorized cursory searches for additional suspects incident to arrest or at any other time the police have reasonable grounds for fearing for their security in the discharge of their duties.

We were aware in *Block* that suspect searches incident to arrest could potentially become as serious a threat to Fourth Amendment freedoms as were the evidentiary searches incident to arrest condemned in *Chimel*. Thus we questioned "the propriety of conducting in every case a general exploratory search for 'possible suspects' . . . ." (*People* v. *Block, supra,* 6 Cal.3d at p. 243.) ▇ In holding the limitations of *Chimel* inapplicable to a search for additional suspects incident to a residential narcotics arrest, we sought in *Block* to forestall abuse of this power to search without a warrant by adopting the substance of the rule propounded in *Terry*: "As a general rule, the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a man of reasonable caution in the belief that the action taken was appropriate. And in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or 'hunches,' but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary." (*People* v. *Block, supra,* 6 Cal.3d at p. 244; citations omitted.)

▇ Applying the foregoing standard to the facts of the case before us we conclude that Officer Holt's excursion into the kitchen was an appropriate action for a man of reasonable caution to take. Holt knew that the traffickers with whom petitioners Guidi and O'Connor were involved included at least two other persons, they being the already-arrested petitioners Lefort and Neilson; that petitioners Guidi and O'Connor and any accomplices who might be present were in possession of 10 pounds of hashish; that the hashish had a $7,500 wholesale value which the officer knew had potential street value in excess of $40,000; that Del Sesto had not looked into any room other than the living room and bathroom; and that upon entering the apartment the officer had heard sounds coming from elsewhere than the open areas. The counter between the kitchen and the living area was high enough and long enough to shelter a lurking accomplice. The value of the contraband reasonably believed present by Holt was surely not so de minimis as to make remote the possibility of violent and desperate efforts to resist the arrests and defend the contraband. Accordingly, the officer's movement which positioned him to glance into the kitchen area

was justified as a cursory search for additional suspects necessary in these circumstances to allay a reasonable fear for his and his fellow officers' personal safety.[7] Holt thus infringed no constitutional mandate in positioning himself where he could view the brown shopping bag containing the hashish.

■ We now address ourselves to the central issue: the question of the inadmissibility of the hashish on the ground that although the view of the brown paper bag was constitutionally obtained, the viewing of the interior of the bag resulting in the disclosure of the hashish was constitutionally impermissible. We proceed to focus our attention on the seizure of the bag itself, which seizure necessarily preceded any examination of the contents of the bag. We have already held that in the case before us the bag was seen in plain sight during a lawful cursory search for additional suspects. We further conclude that the bag itself was evidence of the criminal transactions witnessed by Del Sesto; that the description of the bag by Del Sesto corroborated by the odor emanating therefrom furnished probable cause for Officer Holt to seize the bag; that his seizure of the bag was constitutionally reasonable; and that the search of the bag subsequent to its seizure was therefore likewise reasonable.

We believe *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721], *People* v. *Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365] (revd. on other grounds),[8] and *Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642], set forth the law which properly controls our disposition of this case.

---

[7]Officer Holt first testified at the preliminary hearing that he entered the kitchen area in order to look for the hashish. He later testified that he also did so in order to check for suspects who might have been in that area. This apparent conflict in Officer Holt's testimony does not alter our conclusion that he was aware of and acted upon specific and articulable facts sufficient to warrant a man of reasonable caution in the belief that the security search for additional suspects was appropriate.

Although he did not make an explicit finding of fact as to Holt's motive in entering the kitchen, the committing magistrate in justifying his denial of petitioners' motion to suppress repeatedly implied that he understood that the officer was looking for other suspects rather than for the hashish. In denying petitioners' subsequent section 1538.5 motion, respondent court declared that it was "in substantial accord with the views of . . . the Committing Magistrate." Respondent court also stated that officers can reasonably apprehend danger upon "entering a place, as far as the officers are concerned, where there are people whom they believe [to] have been engaged in narcotic[s] traffic. . . . Certainly I think the officers have a right to look through the apartment to see if there are any confederates present. . . ." There was thus an implied finding of fact as to the purpose for the search of the kitchen. Since it is supported by substantial evidence it cannot be disregarded on appellate review. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) As an appellate court we are bound to "view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Id.,* at p. 425.)

[8]See footnote 11, *infra.*

*Roberts* concerned the conduct of police officers who in the course of a burglary inspection knocked on the door of a suspect's apartment. Their knocks elicited no response but they heard from within what sounded like the moans or groans of a person in distress. At their request the manager admitted them to the apartment where they conducted a cursory search for the person they thought had made the sounds. They found no one, but in the course of their two or three minutes' occupancy of the apartment one of the officers noticed a new radio of the type stolen in the burglary they had been investigating. The officer picked up the radio, turned it over, and recorded the serial number it bore on its base. On the basis of this information the officer later confirmed that the radio was indeed stolen property. This court held that since the initial search of the apartment was suitably circumscribed to serve the exigency which prompted it, both the discovery and inspection of the radio were proper.[9]

*Roberts* was decided prior to *Warden* v. *Hayden, supra,* 387 U.S. 294. Thus *Roberts* properly observed that the United States Supreme Court had theretofore drawn "a sharp distinction between the seizure of property which is stolen or contraband and property which is inoffending of itself and merely evidentiary." (*People* v. *Roberts, supra,* 47 Cal.2d at p. 379.) The validation by *Roberts* of the seizure of property found in plain sight during a cursory search of a dwelling for occupants was accordingly limited to the seizure of contraband or possibly stolen property.

Several years after *Roberts,* however, we held that the "mere evidence" rule had been fashioned by the United States Supreme Court solely as a federal procedural rule. (*People* v. *Thayer* (1965) 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108], cert. den. 384 U.S. 908 [16 L.Ed.2d 361,

---

[9]"[T]he officers in the present case could properly make only that kind of search reasonably necessary to determine whether a person was actually in distress somewhere in the apartment. They could not, for example, ransack the premises or rummage through desk drawers. On the other hand, in the course of conducting a reasonable search they did not have to blind themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered. . . . [¶] In formulating the rules governing lawful searches and seizures the United States Supreme Court has repeatedly recognized the distinction between the seizure of evidence which was readily visible and accessible to the officers and that which was uncovered only after a general, unreasonable ransacking of the premises. . . . [¶] . . . The trial court found on substantial evidence that the entry was lawful for the purpose of rendering aid, hence the officers were justified in entering each room of the apartment to look for someone in distress. The radio was in plain sight and it fitted the general description of property known by the officers to be stolen. Under the circumstances, there appears to be no reason in law or common sense why one of the officers could not pick up the radio and examine it for the purpose of dispelling or confirming his suspicions. The fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable." (*People* v. *Roberts, supra,* 47 Cal.2d at pp. 378-380.)

86 S.Ct. 1342].) Accordingly we declared that "the mere evidence rule is not a constitutional standard and has no application in California." (*Id.*, at p. 642.)

The expansive effect of *Thayer* on *Roberts* was implicit in our decision in *People* v. *Gilbert, supra,* 63 Cal.2d 690, where we read *Roberts* as permitting the plain view seizure of "suspicious objects," without confining such seizures to stolen property or contraband.[10] In *Gilbert* eyewitnesses to a bank robbery saw stolen currency and coins being placed in a brown Alpha Beta Market shopping bag. During the subsequent investigation officers entered a suspect's apartment without a warrant. In the course of their search of the apartment for the suspect, held valid despite the lack of a warrant because it was made under exigent circumstances and was appropriately circumscribed, the officers saw a shopping bag imprinted with the name of the Alpha Beta Market within which they found rolls of coins from the robbed bank. All members of this court agreed with

---

[10]The term "contraband" is one of common legal usage but imprecise legal meaning. Black's Law Dictionary defines it as: "Against law or treaty; prohibited." (4th ed. (1957) at p. 393.) The term has been consciously defined in isolated cases as meaning property which is unlawfully possessed. (See *United States* v. *Old Dominion Warehouse, Inc.* (2d Cir. 1926) 10 F.2d 736, 738; *State* v. *Butler* (1929) 148 S.C. 495 [146 S.E. 418, 419].) Most cases merely use the term without defining it; this tacitly tautological usage is reflected in the Supreme Court's declaration that "contraband is indeed property in which the Government holds a superior [property] interest, but only because the Government decides to vest such an interest in itself. And while there may be limits to what may be declared contraband, the concept is hardly more than a form through which the Government seeks to prevent and deter crime." (*Warden* v. *Hayden, supra,* 387 U.S. at p. 306, fn. 11 [18 L.Ed.2d at p. 792]; cf. *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47].)

Proper usage would appear to convey the sense of property which can *only* be unlawfully possessed, as opposed to stolen property, which can be lawfully possessed by its rightful owner. The distinction between stolen property and contraband is particularly important in regard to plain view seizures. Generally contraband items bear indicia of unlawfulness on their face, while only knowledge of the unique characteristics of a particular chattel or of the circumstances surrounding its possession can establish that any given item of property has been stolen from another. Stolen property, unlike true contraband, does not advertise its own unlawfulness. As may be seen in our examination of the *Roberts* and *Gilbert* cases, positive identification of stolen property, as opposed to contraband, generally requires preliminary inspection of the item thought to have been stolen in order to establish, by going beyond the limits of what is "in plain sight," whether or not the item is in fact stolen. Even though such "inspections" or "examinations" take place within a residence without benefit of warrants, they have not been invalidated as "per se" unreasonable warrantless searches. This result has apparently been reached by treating the examination as an incident of the power to effect a plain view seizure even of a merely suspicious item, i.e., an item which an officer has probable cause to believe has been stolen, but which he must in fact "search" in order to confirm is stolen. This rationale is consistent with the legal posture of plain view seizures and searches of items thus seized. Such seizures and searches incident thereto do not fall under the warrant procedure, and hence are governed by the objective standard of reasonableness, rather than probable cause to believe an offense has been or is being committed. (See fn. 16, *infra.*)

Chief Justice Traynor that such evidence was admissible because "While the officers were looking through the apartment for their suspect they could properly examine suspicious objects in plain sight. (*People* v. *Roberts*, 47 Cal.2d 374, 378-380. . . .)" (*People* v. *Gilbert, supra,* 63 Cal.2d at p. 707.)[11]

Less than two years after *Thayer* and *Gilbert* were decided, the United States Supreme Court held in *Warden* v. *Hayden, supra,* 387 U.S. 294, 300-310 [18 L.Ed.2d 782, 788-794], that the mere evidence rule was a "Fourth Amendment ruling" (*id.,* at p. 303 [18 L.Ed.2d at pp. 789-790]), not a procedural rule solely for federal courts. But citing *Thayer* as the leading case setting forth judicial opposition to the mere evidence rule (*Warden* v. *Hayden, supra,* 387 U.S. at p. 300, fn. 6 [18 L.Ed.2d at p. 788]), *Warden* promptly labelled the mere evidence rule "wholly irrational" (*id.,* at p. 302 [18 L.Ed.2d at p. 789]), and attributed its perpetuation "more to chance than considered judgment." (*Id.,* at p. 308 [18 L.Ed.2d at p. 792].) Concluding that "there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband" (*id.,* at p. 310 [18 L.Ed.2d at p. 794]), *Warden* upheld the admissibility of items of clothing found in the search without

[11]As noted above, *People* v. *Gilbert* was "reversed on other grounds." On certiorari from our affirmance of Gilbert's convictions for robbery and murder, the United States Supreme Court held that Gilbert had been denied his Sixth Amendment right to counsel at a lineup at which he had been identified by several witnesses who subsequently testified against him at trial. (*Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) The court accordingly vacated Gilbert's convictions and remanded the cause to us for determination of whether the witnesses had a source for their in-court identifications of Gilbert independent of and untainted by the prior illegal lineup. Having recalled our remittitur of the cause to the trial court, we then vacated our judgment affirming Gilbert's convictions, reversed the trial court's judgments of conviction and remanded the cause for retrial.

Although we thus vacated our judgment, we regard our statements of law made in *People* v. *Gilbert, supra,* 63 Cal.2d 690, as remaining the law of this jurisdiction save insofar as specifically disapproved by this court or the United States Supreme Court. The search and seizure portions of *People* v. *Gilbert, supra,* have not been disapproved. Indeed, in *Gilbert* v. *California, supra,* 388 U.S. at page 269 [18 L.Ed.2d at page 1184], the Supreme Court vacated certiorari on this issue as improvidently granted. The court explained this action in an appendix: "Assuming that the warrantless entry into the apartment was justified by the need immediately to search for the suspect, the issue remains whether the subsequent search was reasonably supported by those same exigent circumstances. If the [evidence] were come upon in the course of a search for the suspect, the answer might be different from that where it is come upon, even though in plain view, in the course of a general, indiscriminate search of closets, dressers, etc., after it is known that the occupant is absent. Still different considerations may be presented where officers, pursuing the suspect, find that he is absent from the apartment but conduct a limited search for suspicious objects in plain view which might aid in the pursuit. The problem with the record in the present case is that it could reasonably support any of these factual conclusions upon which our constitutional analysis should rest . . . ." (*Gilbert* v. *California, supra,* 388 U.S. at pp. 274-275 [18 L.Ed.2d at p. 1187].)

a warrant of a house for a fugitive. The clothing had been introduced at the trial of a resident of the searched house to prove that he was the armed robber whom eyewitnesses had seen fleeing into the house where the clothing was found.

■ Reviewing *Roberts, Thayer,* and *Gilbert* in the light of *Warden,* we conclude therefrom that the police may effect plain view seizures of evidence found in the course of properly circumscribed cursory searches for suspects, free of former constitutional restrictions of such seizures to contraband or stolen property.

■ In the instant case, the officers entering the apartment were possessed of substantially contemporaneous information describing the container of contraband as a paper shopping bag.[12] In the course of a lawful inspection of the premises he had entered, Officer Holt saw in plain sight a bag conforming to that described as bearing the hashish previously offered for sale to Del Sesto.

In a prosecution for offering drugs for sale, a bag found in the possession of the accused which matched an earlier description of the bag bearing the proffered drugs would itself be, even absent its contraband contents, relevant evidence of the presumably disputed fact that the accused had as alleged offered the drugs for sale. (Evid. Code, § 210.)[13] Thus under *Warden* v. *Hayden, supra,* 287 U.S. 294, such a container could have itself been received at trial and was subject to seizure as evidence of a crime. We have previously distinguished an object which was merely a container concealing items of evidentiary value, and a seized object which itself was evidence of a crime and additionally contained within it other

---

[12]Officer Holt testified that the container was described to him as a paper shopping bag, without the color being given. Del Sesto testified that he described the container as a brown paper or grocery bag. Although the bag in fact bore the logograph of a particular supermarket chain, this was mentioned by neither Holt nor Del Sesto. Since only the corroborating smell of hashish emanating from the bag rendered the seizure of the bag constitutionally reasonable (see *infra*), we do not deem it of importance whether Holt's or Del Sesto's testimony is the more accurate account of the description given to Holt by Del Sesto in the field.

[13]Section 210 provides in pertinent part: " 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The Law Revision Commission commented that "under Section 210, 'relevant evidence' includes not only evidence of the ultimate facts actually in dispute but also evidence of other facts from which such ultimate facts may be presumed or inferred."

items of evidentiary value. (*People* v. *Teale* (1969) 70 Cal.2d 497, 511 [75 Cal.Rptr. 172, 450 P.2d 564].)[14]

Intrinsic to the concept of "plain view" seizures is the proposition that such seizures, unlike searches, are not presumptively invalid whenever effected without the authority of a warrant.[15] Nevertheless, such seizures must still comport with the ultimate Fourth Amendment requirement of reasonableness.[16] We hold that in the particular circumstances of the case

[14]The *Teale* court noted that the requirement that the seized object be itself evidence was crucial to preventing searches for evidence through seizure of supposed containers of evidence. (*People* v. *Teale, supra,* 70 Cal.2d at p. 511, fn. 10.) We have already indicated that the bag seized in this case was itself evidence independent of its contents. As for Officer Holt's subjective intent in seizing the bag, the record indicates that the officer drew no personal distinction between the bag and its contents. He viewed both the bag and the hashish he was certain it contained as evidence of the crime for which petitioners had just been arrested. Holt testified on direct examination at the preliminary hearing: "Q. When you went out in the kitchen and you saw the bag, what did you believe the bag to be?

"A. I thought it was hashish—the bag contained the hashish that Mr. Del Sesto told me about.

"Q. What was your purpose in seizing the bag?

"A. For evidence."

[15]Of course, a seizure of evidence *discovered in the course of a search without a warrant* is presumptively invalid—because the prior search is presumptively invalid. This rule was stated in *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]: "When . . . the question of the legality of . . . a search and seizure is raised . . . the defendant makes a prima facie case when he establishes that . . . private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification." Here the presumption of invalidity is overcome by our finding that Officer Holt had reasonable cause to enter the kitchen in the course of a cursory search for additional suspects.

It should be noted, however, that while no presumption of invalidity attaches to a plain view seizure for lack of a warrant, when the evidentiary admissibility of the fruit of such a seizure is challenged on the ground that the seizure was unreasonable (see fn. 17, *infra*; cf. Pen. Code, § 1538.5, subd. (a)(1)), the People must prove by a preponderance of the evidence that the plain view seizure was constitutionally reasonable. (See *People* v. *Superior Court (Bowman)* (1971) 18 Cal.App.3d 316 [95 Cal.Rptr. 757]. Cf. *People* v. *Faris* (1965) 63 Cal.2d 541, 545 [47 Cal.Rptr. 370, 407 P.2d 282].)

[16]As was said by Chief Justice Warren, speaking for the court in *Terry* v. *Ohio, supra,* 392 U.S. 1, 19-20 [20 L.Ed.2d 889, 904-905]: "[T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. 'Search' and 'seizure' are not talismans. . . . [¶] . . . [When] we deal . . . with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure . . . the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."

We deem the seizure of evidence, contraband, an instrumentality or the fruit of crime which is found in plain sight by an officer who has a right to be in the position from which his plain view is gained to be a seizure not subject to the warrant proce-

before us, the seizure of the bag as evidence of the offense of offering hashish for sale was constitutionally reasonable. Here the bag had been described in advance to the arresting officers; when seen in plain view in the kitchen, the way in which the bag was neatly folded discounted its use as a mere trash bag.[17] (Cf. *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], judgment vacated and cause remanded *sub nom. California* v. *Krivda* (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32], opn. reiterated (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]; *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633,

---

dure. As previously noted in our discussion of *People* v. *Block, supra,* 6 Cal.3d 239, the reasonableness standard applicable to such a seizure requires us " 'to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " (Brackets in original.) (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 20-21 [20 L.Ed.2d at p. 905].)

*Terry* adopted as an objective standard of reasonableness a modified form of the definition of probable cause: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (*Id.,* at pp. 21-22 [20 L.Ed.2d at p. 906].) Compare with *Terry* the definition of probable cause set forth in *Brinegar* v. *United States* (1949) 338 U.S. 160, 175-176 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302]: " 'facts and circumstances . . . sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense had been or is being committed," a belief which must amount to "more than bare suspicion." (*Id.,* at p. 175 [93 L.Ed. at p. 1890].) Since such a firm belief that an offense has been or is being committed is not necessarily a prerequisite to the reasonableness of an intrusion not subject to the warrant procedure, plain view seizures of evidence may be permissible in situations where searches or seizures subject to the warrant procedure are not. (Cf. *People* v. *Roberts, supra,* 47 Cal.2d 374.)

[17]In the course of his direct examination at the preliminary hearing, Officer Holt testified as follows:

"Q. When you first observed the bag inside of the apartment, could you describe the way the bag was situated and give us the physical description of the bag as it appeared to you?

"A. Yes. It was sitting on the floor of the kitchen. It appeared to be a regular brown paper shopping bag, the top of the bag had been turned over as one might— as if it had been folded over as a lunch bag might look, although, of course, it was a lot larger bag.

"Q. What about the dimensions of the bag, the way it appeared to you?

"A. It was a regular large size shopping bag approximately 18 inches high, 12 inches across and approximately eight inches wide.

"Q. Did it appear to have anything in it?

"A. Yes, it did.

"Q. Could you describe what it appeared to you, the shape? If it appeared to have something in it obviously it had a shape within the bag. Can you describe the shape?

"A. I couldn't really tell what the shape inside the bag was, just that it was as opposed to a regular—people frequently use them for trash bags where they are opened or wrinkled. It was just neatly folded as if similar to a lunch bag. I couldn't really tell what the shape of the items were inside.

"Q. At the time you saw the bag, did you believe it to contain the hashish?

"A. Yes, I did."

458 P.2d 713].) These factors alone would not suffice as reasonable justification for the seizure, but Officer Holt also detected an odor of hashish which was strongest near the bag. The reasonableness of the seizure must be judged with due consideration to the total circumstances.[18]

Two additional elements must be weighed in the balance in the determination of the reasonableness of the seizure by Officer Holt. First, the bag was highly portable and second, as described to Holt, the contents of the bag consisted solely of the proffered hashish and nothing else. As will be discussed below, the power to seize carries with it the power to "search" the seized item. Thus too liberal a rule of reasonableness for warrantless evidentiary seizures could quickly erode the general requirement of warrants as prerequisites to searches. Where contraband is believed to be hidden among several items within a container, such as a suitcase or a dresser drawer, seizure of the container may well be more difficult to justify. The type of container which may reasonably be seized as evidence

---

[18]We wish to emphasize that in this case the odor of contraband served to corroborate prior information as to where that contraband was. Here the container had been described in visual terms. Only after it had been visually located did the smell emanating from it enter into the constitutional calculation of reasonableness by corroborating the prior information identifying the bag as the container of contraband.

We do not here hold that only the smell of contraband and nothing more would justify seizing a supposed container of the contraband, nor do we mean to accord "plain smell" a place in Fourth Amendment doctrine equivalent to that occupied by "plain sight." We recognize that the scent of contraband within a residence may well provide, of itself, probable cause to search, and when conjoined with exigent circumstances may justify a warrantless search for and seizure of that contraband.

Petitioners have urged that mandate must issue in this case on the basis of *People v. Marshall* (1969) 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665]. The People have joined petitioners in arguing that *Marshall* is controlling of this case, and therefore the People urge us to overrule *Marshall* and to adopt the reasoning of the dissent therein. (See *People* v. *Marshall, supra,* 69 Cal.2d at pp. 62-67 (dissenting opinion of Mosk, J.).) Although *Marshall* did indeed arise on facts generally similar to those presented by the instant case, we decline to accept the parties' invitation to reconsider *Marshall* or otherwise to reopen the debate therein as to whether the "plain smell" of contraband renders constitutionally reasonable a warrantless search for the source of that smell.

It should be noted that the majority in *Marshall* specifically disclaimed any disagreement with the dissent on the legitimacy of including reasonably detectable odors in the calculation of probable cause to search or to seize. The majority maintained, however, that even probable cause based on the smell of contraband did not overcome the presumed invalidity of a search of a dwelling for that contraband absent a warrant. (*People* v. *Marshall, supra,* 69 Cal.2d at p. 57, fn. 2.) Our decision in the instant case is based on grounds not raised or argued by the parties in *Marshall* and consequently not considered by the court in its opinion therein—the power of the police to seize as "mere evidence" a bag previously described as having borne contraband, when such a bag is properly viewed in plain sight. To the extent that *People* v. *Marshall, supra,* 69 Cal.2d 51, is inconsistent with the views stated herein, it is no longer to be followed.

of a transaction involving narcotics is a container which reasonably appears to hold contraband and little else. Moreover, the less portable a container, the less subject it should be to warrantless seizure as evidence merely by virtue of its role as a container of contraband.

The above standards render clearly justifiable some types of plain view seizures of evidence — such as the seizure of a marijuana "joint" even though the cigarette paper completely obscures the contraband itself from view. It is equally clear that the seizure of other literal containers of contraband would be insupportable—such as the "seizure" of a suspect's entire house. We deem under the totality of circumstances heretofore described that Officer Holt could reasonably conclude that the bag matched the description and location of the bag containing the hashish baggies, gave the appearance of utilization for such storage, emanated a strong smell of hashish and was removable, and that its invasion constituted a minimum infringement of privacy. The seizure was thus constitutionally reasonable.

We have already noted in the context of Officer Holt's entry into the kitchen that when dealing with a seizure and search not subject to the warrant procedure "our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 19-20 [20 L.Ed.2d at p. 905].) Having determined that the seizure of the bag was reasonable, we turn now to the search of the bag after its seizure. Since the bag was seized as evidence, a search of its interior was "reasonably related in scope to the circumstances which justified the interference in the first place." Only by so searching the bag could Officer Holt confirm or discount his initial, constitutionally reasonable conclusion that it had evidentiary value. (See *People* v. *Teale, supra,* 70 Cal.2d at pp. 507-511.)[19] Moreover, under

---

[19]*Teale* contained the following statement of law: "When officers, incidental to a lawful arrest, seize an . . . object in the reasonable belief that such object *is itself evidence* of the commission of the crime for which such arrest is made, any subsequent examination of said object undertaken for the purpose of determining its evidentiary value does not constitute a 'search' within the meaning of the Fourth Amendment." (Italics in original.) (*People* v. *Teale, supra,* 70 Cal.2d at p. 511.) This holding was recently reaffirmed in *North* v. *Superior Court* (1972) 8 Cal.3d 301, 305-308 [104 Cal.Rptr. 833, 502 P.2d 1305], which rejected the contention that *Teale* had been undercut by the limitation on searches incident to arrest imposed in *Chimel* v. *California, supra,* 395 U.S. 752. By citing *Teale* as precedent for our decision in the instant case, we manifestly still adhere to the result reached in *Teale*. Nevertheless, we deem it proper to note that we have since *Teale* departed from the rationale expressed therein for upholding the inspection in that case of an object lawfully seized as evidence. In *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699, 703-706 [94 Cal. Rptr. 412, 484 P.2d 84], we observed that *Terry* v. *Ohio, supra,* 392 U.S. 1, 18, fn. 15 [20 L.Ed.2d p. 904], proscribed "overly technical" definitions of "search." Thus

*People* v. *Gilbert, supra,* 63 Cal.2d 690, 707, police officers may "properly examine suspicious objects in plain sight" not only to assess their evidentiary value but also to expedite the investigation which in the exigencies of the situation allowed the officers to gain a lawful view of the suspicious objects despite the lack of a search warrant. Here the possibility of a violent defense of the valuable shipment of drugs offered for sale was an element in the totality of circumstances permitting a cursory search for additional suspects to be made in the apartment despite the lack of a warrant. Having seen the described container of contraband in plain sight, Officer Holt was justified in ascertaining if it still contained the hashish, so as to evaluate the continuing danger of its violent defense.

Having determined that seizure of the bag was constitutionally reasonable and that inspection of its contents was concomitantly reasonable as an incident of the seizure of the bag, we hold that the bag and its contents are admissible as evidence against petitioners.

The petition for a peremptory writ of mandate is denied, and the alternative writ is discharged.

Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur in the judgment and in the scholarly analysis by the Chief Justice. However I have considerable difficulty with the rationale of footnote 18.

It is comforting that *People* v. *Marshall* (1968) 69 Cal.2d 51 [69 Cal. Rptr. 585, 442 P.2d 665] "is no longer to be followed," but unfortunately the footnote in which that conclusion is reached also contains some confusing equivocation. In short, I agree with the People that this case is controlled by *Marshall* factually and legally; therefore the result reached here calls for a forthright overruling of *Marshall.*

In the instant case we conclude that the officer's movement was justified as a warrantless search and that he "thus infringed no constitutional mandate" *(ante,* p. 10). In *Marshall* even the majority conceded that the officers were properly inside the premises. (69 Cal.2d at p. 56.) In this case the officer saw only "a shopping bag with the opening squared shut"; in *Marshall* the contraband was not in plain sight because it was contained

---

the inspection of the vehicle in *Teale* was justifiable not because it fell outside the Fourth Amendment, but because that inspection, although a "search," was consistent with the reasonableness required by the Fourth Amendment. (See fn. 16, *supra.*) The seizure of the vehicle was premised on the reasonable supposition that it had been the site of a homicide. The only way to verify this supposition was to subject the vehicle to thorough examination by a criminalist.

in "a closed brown paper bag" (*id.* at p. 56). In this case the "distinctive odor of hashish . . . seemed to come directly from the vicinity of the bag" (*ante,* p. 5); in *Marshall* the odor came from the "closed brown paper bag" (69 Cal.2d at p. 55).

All the majority of the sharply divided court permitted in *Marshall* was that "officers may rely on their sense of smell to *confirm* their observation of *already visible* contraband" (italics added; 69 Cal.2d at p. 59). It was that unreasonable restriction which I decried in my dissent (*id.* at p. 63). I insisted then, and continue to believe, that the sense of smell, and indeed all the senses, may be employed, not merely in confirmation of what is already visible, but in equal weight with the sense of sight in the determination of probable cause to search and seize. For illustrations that demonstrate the impracticality of limiting valid discovery of evidence to that which is seen, or to the use of other senses merely in corroboration of what is already known or visible, see my dissent in *Marshall* (at p. 66).

For the reasons stated and in reliance upon the authorities cited in my dissent therein, I would expressly overrule *Marshall* more forthrightly than my colleagues do in footnote 18 of their opinion.

McComb, J., Burke, J., and Clark, J., concurred.