Filed 12/17/21  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAMAR RAMONE JOHNSON,<br><br>Defendant and Appellant. | C089521<br><br>(Super. Ct. No. 16FE008950) |

Defendant Lamar Ramone Johnson moved to suppress evidence, including a firearm, which was discovered after officers entered his apartment to search for the weapon after he was detained.  After the court denied the motion, defendant pleaded no contest to a firearm offense and was placed on formal probation for five years.

Defendant appeals, arguing the court erred in denying the suppression motion because officers unlawfully entered and searched his home without a warrant in violation of the Fourth Amendment.  Defendant also asks us to independently review the sealed

1

record of the hearing on his *Pitchess*[1] motion to confirm that no discoverable evidence existed in the responding officers' personnel records concerning falsification of evidence to support an illegal search and seizure.

We conclude the trial court did not err in denying the motion to suppress because the limited search was justified as a protective sweep. Having reviewed the sealed transcript of the *Pitchess* hearing, we further conclude that no information was discoverable under *Pitchess* and its progeny. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2016, defendant got into a heated argument with his neighbor, J.C., at their apartment complex, and law enforcement responded to the scene after J.C. reported seeing defendant with a gun and hearing a gunshot outside his apartment window. J.C. told the responding officer that defendant had angrily approached him, after J.C. parked his car in an alleyway by their apartment complex, to "squash" an earlier "beef" that defendant had with J.C.'s parents where defendant had been rude and aggressive. J.C. told defendant not to talk to or look at him, and J.C. said that he would not talk to or look at defendant. During the argument, defendant stood with his right hand hidden behind his right leg; he was leaning slightly to the right as if he were holding something.

Defendant became angry and agitated when J.C. refused defendant's demand to squash the family dispute. As the argument escalated, J.C.'s father and brother pulled J.C. away towards their apartment, and defendant's girlfriend, S.A., pulled defendant towards their apartment. It appeared to J.C. that S.A. had noticed something behind defendant when she quickly tried to pull him away. As defendant ascended the stairs,

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2] Because defendant negotiated a plea, the factual summary is based on testimony from the preliminary hearing.

J.C. heard a loud noise as if something had fallen. J.C. turned and saw defendant bend over and pick up a silver handgun. After returning to his apartment, J.C. called police. While speaking to the dispatcher, J.C. heard a loud gunshot right outside his apartment window.

Officers eventually responded and removed defendant and his girlfriend from their apartment. During a sweep of the apartment, officers located a handgun. While being escorted to a patrol car, defendant spontaneously stated that earlier in the day he had found a gun in a trash can outside his apartment.

Defendant was charged with discharging a firearm in a grossly negligent manner (Pen. Code, § 246.3, count one),[3] and unlawfully carrying a loaded firearm in a public place (§ 25850, subd. (a), count two).

Following the preliminary hearing, defendant moved to suppress evidence, arguing that law enforcement's entry into his apartment, which resulted in the seizure of the gun and his inculpatory statement, was not supported by exigent circumstances. The People opposed, arguing officers reasonably entered defendant's apartment to conduct a protective sweep, and also that the warrantless entry was justified given the exigent circumstance that someone might remove or destroy the loaded firearm had officers not seized it. In response, defendant argued that there was insufficient evidence that a third party was in the apartment or that the gun could have been destroyed if the officers had not seized it.

At the suppression hearing, Deputy Darren Anderson testified that he was dispatched to a Sacramento apartment complex at nearly 3:00 a.m. on March 19, 2016, in response to a report of a peace disturbance approximately two hours earlier between two neighbors during which a firearm was brandished, and, later, a gunshot was heard. When

---

[3] Further undesignated statutory references are to the Penal Code.

Anderson arrived, he contacted the 911 caller, J.C., who lived in a downstairs apartment across a breezeway from defendant's upstairs apartment. J.C. told Anderson that defendant had become enraged during their argument over "mak[ing] peace," that defendant's girlfriend had to hold him back, and that his right hand was tucked behind his right side so that J.C. could not see what was in defendant's hand. While defendant climbed the stairs to his apartment, J.C. saw him with a "handgun." Anderson did not ask J.C. the amount of time that passed between their argument and hearing the gunshot.

After speaking with J.C., Deputy Anderson and Deputy James Walther approached the door to defendant's apartment. Anderson heard male and female voices coming from inside the apartment, but he could not tell how many people were inside. The deputies knocked and announced themselves as the Sheriff's Department, but no one responded. Anderson heard the sound of footsteps receding from the front door as if the people inside were walking further into the interior of the apartment; he could not tell from the footsteps how many people were inside. He did not hear voices anymore. Anderson testified that in his experience, when someone inside a residence does not answer the door knowing officers are there, the persons are generally trying to evade the officers or conceal evidence.

After waiting 30 seconds with no response, the officers knocked harder and announced again. As Deputy Anderson knocked on the front door, the door popped open, indicating to the officer that it had not been latched all the way. When the door opened, Anderson saw defendant and his girlfriend walking back from the hallway into the family room area. Anderson directed defendant's girlfriend to walk towards him, and she complied. Deputy Walther directed defendant to walk towards him, and Walther removed defendant from the apartment to his patrol car.

Deputy Anderson testified that two other officers who were also present, Sergeant Kenny Lee and Deputy Talley, proceeded into the apartment to conduct a protective sweep for other individuals or weapons to ensure the officers' safety.

4

While Anderson spoke to defendant's girlfriend, Lee called out that he found a handgun in a back bedroom. Anderson then walked to a spare bedroom and was directed to a shelf in a closet where he saw the butt of a handgun sticking out underneath a stack of jeans. No one else was found inside the apartment.

During cross-examination, Deputy Anderson conceded that his police report stated that the revolver was located in a closet underneath a stack of jeans, but that it did not state that the butt of the gun was sticking out from underneath the jeans. He further conceded that during his preliminary hearing testimony, he did not describe seeing the butt of the gun sticking out from underneath the jeans. In response to questions from the court, Anderson clarified that the gun was partially obscured by the jeans. Once Sergeant Lee announced he had found the firearm, Anderson testified that his purpose in entering the apartment was to locate the gun previously found by Lee. He conceded he did not have permission from either defendant or his girlfriend to enter the apartment, nor did he have a warrant.

Sergeant Lee testified that he assisted the officers the night of the incident, and conducted a protective sweep of defendant's apartment. After defendant and his girlfriend were removed from the apartment, he announced "Sheriff's Department, make yourself known," to alert anyone else in the unit that law enforcement was coming in; he did not receive a response. He then checked areas in the residence where a person could potentially hide. In his experience, he had found persons hiding under sink counters, and in bedrooms, bathrooms, and closets. While conducting the protective sweep of a bedroom closet large enough to fit a person, Lee observed what appeared to be the handle of a pistol sticking out slightly from in between a stack of folded jeans. Lee retrieved the weapon, rendered it safe, and then placed it back where he had found it and summoned Deputy Anderson to show him where he had found the gun.

On cross, Sergeant Lee conceded that he did not originally write a report detailing how he found the gun. Instead, he gave the district attorney a supplemental statement the

5

morning of the suppression hearing that included the detail about the butt of the gun sticking out from underneath the jeans. He denied searching defendant's apartment for the gun specifically, reiterating that he had been doing a protective sweep for a person when he saw the butt of the gun in plain sight. While conceding there was "no exigency" at the time he discovered the gun, Lee expressed concerns that someone could have entered the apartment at a later time and fired it.

Defendant called Deputy Walther as a witness. He initially testified that he could not recall whether he knocked on the door, or just announced his presence, but later said that the door opened when he knocked on it. He did not hear anything after knocking, but saw defendant and his girlfriend coming from the hallway. He went into the apartment, handcuffed defendant in the living room area, and escorted him to his patrol car. He did not take part in the protective sweep of the apartment.

Following the close of evidence, defense counsel argued that there was no exigency to enter defendant's apartment two hours after J.C. reported hearing the gunshot outside his apartment after his confrontation with defendant. According to counsel, when the officers knocked on the door and it opened, they violated defendant's Fourth Amendment rights. He further argued that there were no articulable facts justifying the protective sweep because no one responded to Sergeant Lee's presence announcement, and, thus, there was no reason to believe anyone else was in the apartment. In counsel's view, the officers' testimony that the butt of the gun was partially visible under the stack of jeans was not credible.

The prosecutor argued the protective sweep was justified because the officers were unaware how many people were in the apartment with a potentially deadly weapon. She further pointed out that when officers initially made their announcement they did not receive a response even though defendant and his girlfriend were inside the apartment.

6

After considering the evidence and the parties' arguments, the court denied the motion to suppress. In so ruling, the court specifically found Sergeant Lee's testimony regarding the gun credible.

In May 2019, defendant pleaded no contest to count two as a felony in exchange for an agreed disposition and dismissal of count one. At that time, defendant waived a referral to the probation officer and requested immediate sentencing. He was placed on formal probation for five years with conditions including 210 days in county jail. Defendant appealed, challenging the court's order denying his motion to suppress.

## DISCUSSION

## I

Defendant contends the court erred in denying his motion to suppress because the warrantless entry into his apartment constituted an unreasonable search that was not justified by any exigent circumstances or exception to the Fourth Amendment warrant requirement. We disagree.

When, as here, we review a ruling on a defense motion to suppress evidence, we defer to the trial court's factual findings if supported by substantial evidence, and independently apply the requisite legal standard to the facts presented to determine as a matter of law whether there has been an unreasonable search or seizure. (*People v. Celis* (2004) 33 Cal.4th 667, 679 (*Celis*); *People v. Miranda* (1993) 17 Cal.App.4th 917, 922; *People v. McDonald* (2006) 137 Cal.App.4th 521, 529 ["We judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness' "].) "We may sustain the trial court's *decision* without embracing its *reasoning*." (*McDonald,* at p. 529, original italics.) Thus, we may affirm the ruling on defendant's motion to suppress if it is correct on any theory of the law applicable to the case, even if the ruling is based on an incorrect reason. (*Ibid.*, citing *People v. Smithey* (1999) 20 Cal.4th 936, 972.)

7

The Fourth Amendment to the United States Constitution protects citizens from unwarranted governmental intrusion. It provides that the people are entitled "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 748 [80 L.Ed.2d 732].) "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (*Mincey v. Arizona* (1978) 437 U.S. 385, 393-394 [57 L.Ed.2d 290].) "Because a warrantless entry into a home is presumptively unreasonable, the government bears the burden of establishing that exigent circumstances or another exception to the warrant requirement justified the entry." (*People v. Troyer* (2011) 51 Cal.4th 599, 606.)

There are a few well-settled exceptions to the presumption of unreasonableness, however. (*Celis, supra*, 33 Cal.4th at pp. 676-677.) These exceptions include " ' "hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling." ' " (*Id.* at p. 676.)

Although each of the above exceptions require probable cause to believe entry is warranted given the exigency (*Minnesota v. Olson* (1990) 495 U.S. 91, 100 [109 L.Ed.2d 85]), officers may conduct a protective sweep of a home as a precautionary matter and without probable cause or reasonable suspicion where there are "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a

danger to those on the arrest scene."**4** (*Maryland v. Buie* (1990) 494 U.S. 325, 334 [108 L.Ed.2d 276] (*Buie*).) "Like the limited patdown for weapons authorized by *Terry v. Ohio* [(1968)] 392 U.S. 1, 21, 27 [20 L.Ed.2d 889], a protective sweep may not be based on 'a mere "inchoate and unparticularized suspicion or 'hunch.' " ' " (*Celis, supra,* 33 Cal.4th at p. 678; see *Buie,* at p. 332.)

In this case, Deputy Anderson and Sergeant Lee both testified that officers entered defendant's apartment to conduct a protective sweep after detaining defendant and his girlfriend at the door of their apartment following defendant's earlier heated confrontation with a neighbor. Defendant argues the protective sweep was unjustified because there was no reason to believe a dangerous individual was inside the apartment after defendant and his girlfriend were removed since Anderson testified during cross that he heard a male voice and a female voice inside the apartment before the front door opened.

Deputy Anderson, however, also testified on direct that when he ascended the landing to defendant's second story apartment, he "heard voices, male and female voices coming from inside the apartment unit." At the time he heard the voices, Anderson specifically testified that he could not tell how many people were actually inside defendant's apartment. After knocking and announcing themselves as law enforcement, the voices ceased and Anderson heard footsteps receding further into the interior of the apartment. When asked whether he could tell how many people were inside the apartment based on the footsteps he heard, Anderson testified that he could not. Thus, Anderson's response to the narrow question posed during cross-examination regarding

---

**4** While *Buie* involved a protective sweep in the context of an arrest, subsequent cases "have clarified that its holding is not limited to arrest situations." (*People v. Ledesma* (2003) 106 Cal.App.4th 857, 864; see, e.g., *United States v. Taylor* (6th Cir. 2001) 248 F.3d 506, 513 [officer left behind to secure residence while search warrant obtained may conduct protective sweep].)

9

whether he heard a male voice and a female voice does not mean that multiple men or women could not have been in the apartment as his earlier testimony indicated.

The officers, moreover, were responding to a 911 call from a neighbor who had gotten into a heated confrontation with defendant while he was carrying a gun. After defendant's girlfriend pulled him away from the argument, defendant dropped the gun on the stairs leading up to his apartment. He picked up the gun, and, according to J.C. and his brother, defendant did not seem to care if anyone saw him with it. Learning this information after speaking with J.C., the officers could reasonably infer that defendant took the gun back into his apartment.

The totality of the facts known to the officers and the reasonable inferences from those facts, plus Deputy Anderson's inability to discern the exact number of voices or footsteps he heard behind the closed front door before entering the apartment, constitute sufficient "articulable facts" and rational inferences that would warrant a reasonably prudent officer to entertain a reasonable suspicion that the area to be swept could harbor a person posing a danger to officer safety even though defendant and his girlfriend had been removed from the apartment. (*Buie, supra*, 494 U.S. at pp. 327, 334; compare *Celis, supra*, 33 Cal.4th at p. 679 [protective sweep held invalid where the defendant was not armed with a gun and officers had no knowledge that anyone was in defendant's home when they detained him in his backyard].) Indeed, the danger to officers is greatest when, as here, they are in a private home rather than a public place of accommodation. (*Buie,* at p. 333 [The officer is "at the disadvantage of being on his adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings"].)

Because we conclude the officers lawfully conducted a protective sweep of defendant's apartment, Sergeant Lee was authorized to seize the gun, which he testified he saw in plain sight, partially concealed under a stack of jeans in a closet big enough to conceal a person. It has long been settled that during a lawful search of premises for

10

persons believed to be hiding that police officers may seize contraband evidence in plain sight. (See *People v. Marshall* (1968) 69 Cal.2d 51, 56 [discussing plain sight rule], disapproved on other grounds by *Guidi v. Superior Court* (1973) 10 Cal.3d 1, 17, fn. 18.) The trial court found Lee's testimony credible on this point, and we have no occasion to second guess that factual determination here. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [appellate court will uphold trial court's factual findings supported by substantial evidence when reviewing denial of motion to suppress].)

The trial court did not err in denying defendant's motion to suppress.[5]

## II

Defendant moved to discover complaints in Deputy Walther's and Deputy Anderson's personnel files alleging that they had falsified evidence or testimony, made illegal arrests, made unlawful searches and seizures, or engaged in alleged acts of moral turpitude. The Sheriff's Department conceded that "good cause" existed on that issue, and the trial court conducted an in camera hearing with the custodian of records for the deputies' personnel records. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 94 [good cause requirement embodies a relatively low threshold for discovery]; Evid. Code, § 1045, subd. (b).) After the in camera hearing, the court denied the motion , finding there were no responsive records that were discoverable. Defendant requests that we review the in camera hearing to determine whether the trial court abused its discretion in so ruling. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221 ["A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard"].)

---

[5] Given our conclusion that the protective sweep and seizure of the gun was constitutional, we need not consider defendant's alternative arguments that the search was not justified under the emergency aid or destruction of evidence exceptions to the Fourth Amendment warrant requirement.

The People contend defendant's request is barred by his plea and the absence of a certificate of probable cause. As defendant argues, however, to the extent a *Pitchess* motion is intertwined with litigating the legality of the search he challenged in his motion to suppress, the issue is cognizable on appeal notwithstanding his no contest plea or a certificate of probable cause. (*People v. Collins* (2004) 115 Cal.App.4th 137, 141, 150-151.) Here, defendant filed the *Pitchess* motion before the motion to suppress, and sought the officers' personnel records because defendant contended they had falsified their reports to justify the warrantless entry into his apartment. Because this appeal is authorized by section 1538.5, subdivision (m), and the *Pitchess* motion was intertwined with litigating the legality of the search, the trial court's denial of that motion is cognizable on this appeal and we proceed to the merits of defendant's *Pitchess* claim.

Evidence Code sections 1043 through 1045 and Penal Code sections 832.5, 832.7, and 832.8 codify *Pitchess, supra*, 11 Cal.3d 531, which recognized that "a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219.) " 'The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense.' " (*People v. Jackson, supra*, 13 Cal.4th at p. 1220.)

If a defendant seeking to discover an officer's personnel records makes "a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion." (*People v. Mooc, supra*, 26 Cal.4th at p. 1226.) "The trial court 'shall examine the information in chambers' [citation] 'out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present[.] [Citations.]' " (*Ibid.*; see Evid. Code, §§ 915, subd. (b) & 1045, subd. (b).) Thus, "both

12

*Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations." (*Mooc,* at p. 1227.)

As requested, we have reviewed the sealed transcript of the in camera proceeding in which the trial court questioned the custodian of records under oath regarding Deputy Walther's and Deputy Anderson's personnel records. Based on our review, we conclude the trial court did not abuse its discretion in finding that no disclosable evidence responsive to defendant's request existed.

### DISPOSITION

The judgment and the order denying defendant's motion to suppress evidence are affirmed.


                                                /S/

                                        MAURO, J.



We concur:


     /S/

RAYE, P. J.



     /S/

MURRAY, J.